WO                                                                                                          MDR

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ramon Luis Mendoza, | No. CV 21-00829-PHX-MTL (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| David Shinn, et al., | |
| Defendants. | |

On May 6, 2021, Plaintiff Ramon Luis Mendoza, who is confined in the Arizona State Prison Complex-Eyman (ASPC-Eyman) in Florence, Arizona, filed a "Motion Requesting Exception to Exceed 15 Page Limit in § 1983 Civil Rights Complaint" and lodged a 36-page pro se civil rights Complaint. In a May 13, 2021 Order, the Court denied the Motion, gave Plaintiff thirty days to file a Complaint that complied with Local Rule of Civil Procedure 3.4 and the instructions provided with the court-approved civil rights complaint form, and gave Plaintiff thirty days to either pay the filing and administrative fees or file a complete Application to Proceed In Forma Pauperis.

On May 19, 2021, Plaintiff filed a Complaint (Doc. 6). On June 1, 2021, he paid the filing and administrative fees. The Court will order Defendants to answer the Complaint.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28

U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.   Complaint**

In his two-count Complaint, Plaintiff sues the following Defendants in their individual and official capacities: Arizona Department of Corrections (ADC) Director David Shinn, Special Security Unit (SSU) Statewide Supervisor Carlos Reyna, Security

Threat Group (STG) Supervisory Investigator Lance Uehling, Northern Regional Director Kevin Curran, Classification Administrator Evangelina C. Flores, Offender Service Bureau Administrator Stacy Crabtree, Warden W. Hensley, Deputy Warden Panam S. Days, Assistant Deputy Warden Orin N. Romney, SSU Lieutenant/Coordinator Steve Young, Classification Review Officer David Lewis, and Grievance Coordinator Delacruz.  In his Request for Relief, Plaintiff seeks declaratory and injunctive relief, monetary damages, and his costs of suit.

        Plaintiff is confined in ASPC-Eyman's Browning Unit, which was previously called the Special Management Unit II.  Plaintiff claims confinement in that unit imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. (Doc. 6 ¶ 45.)[1]  According to Plaintiff, "STG-Subclass" inmates in the Browning Unit, in contrast to general population inmates, have virtually every aspect of their lives controlled and monitored.  (*Id*. ¶¶ 47-48.)  He claims the Browning Unit "is synonymous with extreme isolation" and inmates are "deprived of almost any environmental or sensory stimuli." (*Id*. ¶ 50.)  Inmates are confined, alone, in constantly illuminated 8' by 10' windowless concrete cells.  (*Id*. ¶ 49.)  Inmates are only fed twice a day, in their cells, and the calories in those meals are fewer than those served to general population inmates.  (*Id*. ¶ 48.)  Inmates are handcuffed and subjected to strip searches whenever they leave their cells, are prohibited from having physical contact with other inmates, cannot have contact visits, and their physical interaction with others is limited to those situations when staff members handcuff them.  (*Id*. ¶¶ 49-50.)  Their recreation is limited to "chute[-]style" recreation areas with 20' high concrete walls and no exercise equipment other than a racquetball.  (*Id*. ¶ 50.)  In addition, the inmates receive, at best, minimal general and educational programing.  (*Id*.)

        Plaintiff alleges STG members in the Browning Unit are placed in these conditions for a mandatory 24-month term, whereas non-STG inmates are only placed in these

---

[1] The citation refers to the document number generated by the Court's Case Management/Electronic Case Filing system and the paragraph number listed in Plaintiff's Complaint.

1   conditions for 12 months. (*Id.* ¶ 63.) Plaintiff also contends that because he has a "STG-
2   Maximum Custody assignment," he cannot earn early release credits (ERC). (*Id.* ¶ 56.)
3   He claims that pursuant to ADC policy, inmates designated as current or active STG
4   members lose good time credits, are ineligible for "escorted leave" or the recission or
5   restoration of forfeited time credits, and are ineligible for restoration of Parole Class III or
6   other credits unless they renounce or successfully complete ADC's Step-Down
7   Program. (*Id.*)

8   Plaintiff contends the Step-Down Program is a program that allows active STG
9   members to "remove themselves from STG activity and reject gang affiliation." (*Id.* ¶ 4.)
10  He alleges the Step-Down Program "is not a privilege 'per-se," but is an "alternative exit
11  mechanism" that is "distinct from debriefing." (*Id.* ¶¶ 38-39.) He claims ADC established
12  the Step-Down Program after the courts concluded that continued segregation in the
13  Browning Unit under STG-status, with annual review alone, violated prisoners' due
14  process rights. (*Id.*)

15  Plaintiff asserts he successfully completed the Step-Down Program, left the
16  Browning Unit as an "inactive" STG member, and has been in close custody confinement
17  since March 2018. (*Id.* ¶¶ 3, 40.) He claims, however, that on January 23, 2021, his status
18  as an "inactive" STG member was revoked, he was removed from the Step-Down Program,
19  he was "remanded/transferred" to the Browning Unit, and he is now designated as an
20  "active" STG member. (*Id.* ¶¶ 1-2, 5.) Plaintiff alleges this impacted "eligibility to
21  E.R.C.'s, rehabilitative, educational, substance abuse, mental health treatment, vocational
22  training and work programs . . . and Honor Pod living and contact visits." (*Id.* ¶ 31.)

23  Plaintiff claims placement in a maximum-security segregation unit implicates a
24  liberty interest and requires due process protections. (*Id.* ¶ 30.) He asserts that once an
25  inmate completes the Step-Down Program and successfully reintegrates into the general
26  population as an inactive STG member, his "[liberty] interest [is] now an entitlement," and
27  he should receive due process, "especially where there exist specific substantive and
28  procedural due process predicates to be had." (*Id.* ¶ 34.)

Plaintiff alleges the procedures in Department Order (DO) 806.11 in effect on January 23, 2021, severely limited ADC officials' authority to revoke an inmate's status as an inactive STG member, remove an inmate from the Step-Down Program, and transfer the inmate back to the Browning Unit. (*Id.* ¶ 33.) He claims that when his inactive status was revoked, he was removed from the Step-Down Program, and he was returned to Browning Unit, he did not receive due process, the "specific substantive process of DO 806.11.0," or proper notice, a hearing, or an opportunity to be heard. (*Id.* ¶¶ 1, 5, 16.) Plaintiff contends Defendants made an "illegitimate and arbitrary decision" and did not comply with "all procedural safeguards." (*Id.* ¶ 5.)

Specifically, Plaintiff claims Defendant Reyna authorized Plaintiff's removal from close custody, the revocation of his status as an inactive STG member, and his return to the Browning Unit. (*Id.* ¶ 10.) Plaintiff alleges that on January 23, 2021, Defendant Young and two of his subordinates removed Plaintiff from his cell and informed him that he was being removed from close custody, his status as an inactive STG member was being revoked, and he was being transferred back to the Browning Unit. (*Id.* ¶ 6.) Plaintiff contends this was done "with no valid explanation," no due process, and none of the procedural requirements outlined in DO 806.11.0. (*Id.*) Plaintiff asserts that one of Defendant Young's subordinates told Plaintiff he would not be "accorded" due process, notice, a hearing, or "redress" of his change in STG status, even though this was mandated by ADC policy, because "the policy was being changed" and the new policy, which did not provide for notice or hearing, was "being practiced." (*Id.* ¶ 8.)

On January 25, 2021, Defendant Reyna told Plaintiff that the "policy regarding the STG-Subclass was being completely changed" and that "due to the changes to come[,] there would no longer be any notice, hearings or opportunities to be heard" regarding STG validation, revocation of inactive STG status, or remand of STG inmates. (*Id.* ¶ 10.) Plaintiff claims, however, that the written policy that was in effect mandated pre-deprivation due process procedures regarding validation, revocation, and remand. (*Id.* ¶ 11.) Defendant Reyna allegedly told Plaintiff that "his hands were tied

because [Defendants Curran and Uehling] ordered the recent removals, revocations and remands of Plaintiff and about a dozen other prisoners without according specific substantive and procedural due process." (*Id.* ¶ 11.)

Plaintiff filed an informal complaint regarding the deviation from policy and the denial of due process. (*Id.* ¶ 14.) He then filed a February 22, 2021 grievance. (*Id.*) Plaintiff claims Defendant Delacruz "ignored the unlawful acts being imposed on Plaintiff" and returned the grievance unprocessed, explaining that Plaintiff could not grieve STG and classification issues under the general grievance policy because the Department Orders governing classification and STGs have their own appeal process. (*Id.*) Plaintiff filed an appeal, but Defendant Delacruz intercepted it. (*Id.* ¶ 15.) On March 5, 2021, Defendant Delacruz explained that the Arizona Attorney General's Office had stated that the "the need for due process" regarding "[Step-Down Program] revocations . . . is to be satisfied by [the Department Order governing classification]." (*Id.*) Plaintiff asserts, however, that this was "false and improper" because on March 18, 2021, ADC's general counsel sent an email to the director of Middle Ground Prison Reform detailing the process required in DO 806 regarding the removal of inmates from the Step-Down Program and "illustrated that the Plaintiff should have appeared before an STG-VHC and [wa]s required an appeal process." (*Id.*)

On February 13, 2021, Defendant Lewis conducted a "Periodic/Initial Review of Plaintiff[']s Maximum Custody Placement in Administrative Segregation." (*Id.* ¶ 17.) Plaintiff claims the review was inadequate and did not comport with due process. (*Id.*) He contends Defendant Lewis "utilized vagarious and invalid statements" as the basis for Plaintiff's current placement in the Browning Unit and improperly used Plaintiff's initial STG validation as a "pretext" for Plaintiff's current placement in the Browning Unit. (*Id.*)

On February 17, 2021, Defendant Romney approved the review of Plaintiff's placement in the Browning Unit. (*Id.* ¶ 19.) On February 19, 2021, Defendant Days approved Plaintiff's placement, using Plaintiff's initial STG validation as a "pretext" for his current placement in the Browning Unit. (*Id.* ¶ 18.) Plaintiff claims Defendant Days'

review of his confinement was "meaningless, rote, repetitious and did not safeguard him against the risk of an erroneous deprivation" and that he never received a revocation hearing to "substantiate the current placement in [the Browning Unit] under the pretense of validation as an 'active' STG member." (*Id*.)  Plaintiff contends this "shows the systemic failure to ensure that such reviews . . . conform[] to due process requirements." (*Id*.)

On February 26, 2021, Defendant Flores, "on a review of [Plaintiff's] placement and status," approved Plaintiff's placement in the Browning Unit. (*Id*. ¶ 20.) On March 6, 2021, Defendant Crabtree approved Plaintiff's placement in the Browning Unit based on a validation hearing she asserted took place on November 30, 2019. (*Id*. ¶ 21.) Plaintiff claims this is incorrect because he has been designated as an inactive STG member since March 2018. (*Id*.) Plaintiff contends that Defendant Crabtree's review was "meaningless and did not comport with due process" and that he "never received the specific substantive predicates of DO 806.11 required to revoke his 'inactive' status or remand him to . . . [the Browning Unit]." (*Id*.)

Plaintiff claims that on March 15, 2021, Defendant Uehling told him that he was not entitled to due process because the Step-Down Program was a "privilege" and that he would not be receiving "revocation, revalidation[-]type notice, [a] hearing or [an] opportunity to be heard" in light of the new policy that would go into effect on April 15, 2021. (*Id*. ¶¶ 26, 39.) Defendant Uehling allegedly told Plaintiff that "his 'Big Dawgs' (presumably Defendants Shinn and Curran)" had authorized him to deviate from the current policy, which required due process before an inmate's status as an inactive STG member was revoked and the inmate was removed from the Step-Down Program and returned to the Browning Unit. (*Id*. ¶ 26.) According to Defendant Uehling, the new policy would remove notice, hearing, and an opportunity to be heard and would give Defendants Uehling and Reyna the authority to decide "who will 'go' and who 'wont.'" (*Id*. ¶ 27.)

In **Count One**, Plaintiff alleges he was denied due process, in violation of the Fourteenth Amendment.  Plaintiff asserts he has been in the Browning Unit since January

23, 2021, "under the pretense of being an active STG member" without the "due process predicates" required to determine "active status-distinction, revocation [and] remand)." (*Id.* ¶ 42.) He claims he should have been provided due process protections before his inactive status was revoked and he was removed from the Step-Down Program and returned to the Browning Unit, but Defendants intentionally deviated from the written policy, which provided notice, a hearing, and an opportunity to be heard. (*Id.* ¶ 29.) Plaintiff alleges he was subjected to conditions of confinement that constitute an atypical and significant hardship and was denied "any meaningful review" of his classification and his continued confinement in the Browning Unit. (*Id.* ¶¶ 29, 37.)

Plaintiff contends the "patterns and practices" imposed on him violated due process; were the result of policies and practices approved and implemented by Defendants Shinn, Curran, Reyna, Uehling, "and more"; and were the "result of failings by an already corrupt and malicious SSU/STG office." (*Id.* ¶¶ 35-36.) He alleges Defendant Young provided no due process and the review process provided by Defendants Lewis, Romney, Days, Flores, and Crabtree "did not conform to the due process requirements" in *Wilkinson v. Austin*, 545 U.S. 209 (2005), and denied him due process. (*Id.* ¶ 22.) Plaintiff claims "all named Defendants" and, specifically, Defendants Reyna, Delacruz, Days, Romney, Flores, Shinn, Curran, Hensley, and Uehling "knowingly acquiesced" in the "unlawful acts, omissions[, and] ratifications of Practices and Procedures . . . which violated and continue to violate Plaintiff's rights." (*Id.* ¶¶ 13, 15, 18-20, 23-25, 28, 40.)

In **Count Two**, Plaintiff alleges he has been subjected to cruel and unusual punishment, in violation of the Eighth Amendment. Plaintiff claims prolonged solitary confinement violates international standards; constitutes "torture or cruel, inhuman[e, or] degrading treatment or punishment"; and causes a persistent and heightened level of anxiety and nervousness, headaches, insomnia, lethargy or chronic fatigue, obsessive ruminations, an oversensitivity to stimuli, irrational anger, social withdrawal, and emotional flatness. (*Id.* ¶¶ 42 67.) He alleges he suffers from all of these effects as a result of his confinement in the Browning Unit. (*Id.* ¶ 67.) Plaintiff also contends the conditions

in the Browning Unit impose "long-term physical isolation," "exert[] psychological control with the aim to break the human spirit," and inflict "severe psychological decompensation." (*Id*. ¶¶ 48, 54, 60.) He alleges the conditions in the Browning Unit have caused him psychological distress, "unrelenting and crushing mental anguish," pain and suffering, anxiety, insomnia, weight loss, paranoia, sociopathic tendencies, and post-traumatic stress disorder. (*Id*. ¶¶ 14, 55, 66.)

Plaintiff alleges Defendants' "decades-long infliction of significant psychological and physical harm and the risk of future debilitating harm on those incarcerated [in the Browning Unit] . . . offends civilized society's sense of decency[] and is a disproportionate punishment" that violates the Eighth and Fourteenth Amendments. (*Id*. ¶ 57.) He claims that Defendants' practices and procedures "violate contemporary standards of human dignity and decency" and that Defendants know the conditions in the Browning Unit are "harmful and detrimental to the overall health and well[-]being of humans," but they continue to arbitrarily subject inmates to these conditions without proper due process protections. (*Id*. ¶¶ 51, 59.) He alleges ADC has been using "these 'status-based' confinements since 1991, and all Defendants have knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices" at the Browning Unit. (*Id*. ¶ 61.)

Plaintiff contends Defendant Reyna initially validated Plaintiff as an STG member in 2012 and "once again is the cause of Plaintiff's current incarceration" in the Browning Unit. (*Id*.) Plaintiff asserts Defendants Shinn and Curran are "especially responsible" because they "knowingly authorized the practices and actions which were imposed upon Plaintiff" and developed a "'new' [DO] 806 policy which only enforces, induces and perpetuates the punitive nature of such confinements and status[-]based segregations." (*Id*. ¶ 62.)

Plaintiff alleges he has never received a finding or hearing to validate him as a current or active STG member, but he is nevertheless being subjected to the conditions in the Browning Unit. (*Id*. ¶ 57.) He claims this "illustrat[es] <u>disproportionate punishment</u>

and deprivation of [a] liberty interest." (*Id*.)  He also asserts that Defendants have "no legitimate penological interest in retaining [him] in [the] debilitating conditions [in the Browning Unit] absent . . . [the] due process predicates in DO 806.11" and their actions are "unmoored from any legitimate penological purpose or security need." (*Id*. ¶¶ 57, 64-65.)  Finally, Plaintiff contends reviews are "meaningless and rote" and use invalid "initial status-based justifications as a context for Plaintiff[']s incarceration." (*Id*. ¶ 59.)

### III.    Discussion

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

A claim against an individual in his or her *official* capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Although a plaintiff can maintain a lawsuit for damages against ADC employees in their *individual* capacities, a plaintiff cannot maintain a lawsuit for damages against ADC employees in their *official* capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the

suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983. Likewise[,] 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted). A plaintiff, however, may maintain a lawsuit against ADC employees in their *official* capacity for prospective declaratory and injunctive relief because under the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment "does not . . . bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).

### A. Count One

Liberally construed, Plaintiff has stated due process claims in Count One against Defendants in their individual capacities and against Defendant Shinn in his official capacity. The Court will dismiss the official capacity claims against the remaining Defendants because they are duplicative of the claim against Defendant Shinn. *See Monell*, 436 U.S. at 690 n.55 (a claim against an individual in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent."). The Court will require Defendants Hensley, Curran, Reyna, Uehling, Young, Lewis, Days, Flores, Crabtree, Romney, and Delacruz to answer Count One in their individual capacities only and Defendant Shinn to answer Count One in his individual and official capacities.

### B. Count Two

To state an Eighth Amendment conditions-of-confinement claim against a defendant in his or her individual capacity, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal

quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Plaintiff's allegations in Count Two do not support a claim that any Defendant, in his or her individual capacity, acted with deliberate indifference. Thus, the Court will dismiss the individual capacity claims in Count Two. Liberally construed, Plaintiff has stated an Eighth Amendment claim in Count Two against Defendant Shinn in his official capacity only. The Court will dismiss as duplicative the official capacity claims against the remaining Defendants. *See Monell*, 436 U.S. at 690 n.55.

### IV.   Warnings

#### A.   Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

#### B.   Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a

copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**C.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     The official capacity claims against Defendants Hensley, Curran, Reyna, Uehling, Young, Lewis, Days, Flores, Crabtree, Romney, and Delacruz are **dismissed as duplicative**.

(2)     The individual capacity claims in Count Two are **dismissed without prejudice**.

(3)     Defendants Hensley, Curran, Reyna, Uehling, Young, Lewis, Days, Flores, Crabtree, Romney, and Delacruz must answer Count One in their individual capacities only.  Defendant Shinn must answer Count One in his individual and official capacities.  Defendant Shinn must answer Count Two in his official capacity only.

(4)     The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Shinn, Hensley, Curran, Reyna, Uehling, Young, Lewis, Days, Flores, Crabtree, Romney, and Delacruz.

(5)     Plaintiff must complete[2] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

---

[2] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(9) A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for

---

Arizona Department of Corrections unless the officer or employee works there.

photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)    Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)    Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13)    This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 20th day of September, 2021.

Michael T. Liburdi
United States District Judge

**TERMPSREF**